STATE OF NORTH CAROLINA v. JOSEPH MARIO TARANTINO

No. 30PA87

(Filed 2 June 1988)

**Searches and Seizures § 25— marijuana growing in building—deputy peering through cracks in wall—no probable cause for search warrant**

    The decision of the U. S. Supreme Court in *U. S. v. Dunn*, 480 U.S. ---, does not require a reversal of the trial court's decision to grant defendant's motion to suppress evidence taken from his building where a deputy received a tip from an unreliable confidential informant that marijuana was growing in an old store building which was built into a hillside, the deputy went to the store at approximately 11:00 p.m. without a warrant, knocked on the front door, then climbed a hill to the back of the building and, using a flashlight, entered an open porch and knocked on one of the inside doors, searched the back wall until he found small cracks in the wall, illuminated a small part of the interior by maneuvering his body and his flashlight and observed marijuana plants, and then obtained a search warrant. The building's padlocked front door, nailed back doors, and boarded windows indicate that defendant had a subjective expectation of privacy in his building's interior, and this expectation was not unreasonable even though there were small cracks between the boards in the building's back wall.

    Justice MITCHELL dissenting.

    Justices MEYER and WEBB join in this dissenting opinion.

ON discretionary review of a decision of the Court of Appeals, 86 N.C. App. 441, 358 S.E. 2d 131 (1987), affirming an order entered by *Gray, J.*, presiding at the 7 April 1986 Mixed Session of Superior Court, AVERY County, granting defendant's motion to suppress evidence seized by a law enforcement officer from a building defendant owned. Heard in the Supreme Court 11 February 1988.

*Lacy H. Thornburg, Attorney General, by John H. Watters, Assistant Attorney General, for the state.*

*Beskind and Rudolf, P.A., by Thomas K. Maher, for defendant appellee.*

EXUM, Chief Justice.

The sole issue this case presents is whether, in light of the United States Supreme Court's decision in *Dunn v. United States*, 480 U.S. ---, 94 L.Ed. 2d 326 (1987), the Court of Appeals correctly upheld the trial court's decision to grant defendant's motion to suppress evidence seized from his building because the information furnishing probable cause for the search warrant was obtained in violation of the Fourth Amendment of the United States Constitution. We answer yes, and affirm the Court of Appeals.

I.

On 10 April 1986 Judge Gray conducted a hearing on defendant's motion to suppress evidence seized from a building he owned. After the hearing, he made findings of fact to which neither the state nor defendant except. He found that on 30 August 1985 B. R. Baker, Jr., a detective in the Avery County Sheriff's Department, received a telephone call from a confidential informant who said he had seen marijuana plants growing on the second floor of the old "Aldridge Store Building." The caller informed Detective Baker that the plants could be observed by looking through cracks in the building's back wall. Detective Baker concluded he lacked probable cause to obtain a search warrant because he knew the caller to be unreliable. At approximately 11 p.m. he went to the building, without a warrant, to investigate the caller's claims.

The building which Detective Baker investigated was a two-story frame structure built into a hillside. It was in poor repair when he made his inspection. The windows were boarded from the inside, the solid-wood front door was padlocked, and the back doors—one solid and the other with a paneless window covered by wood—were nailed shut. The back doors opened directly to the building's second floor from a porch which had a large open entrance. At the bottom of the wall between the porch doors were several cracks where the wooden boards did not join com-

pletely. These cracks were no more than one-quarter of an inch wide.

Detective Baker began his investigation by knocking on the front door. He then climbed the hill to the second-story porch, using a flashlight to guide his way along a little-used path. He entered the porch and knocked on one of the doors inside. Receiving no answer, he searched the back wall until he found cracks in the wall between the doors. By maneuvering his body and shining his flashlight through the cracks, Detective Baker illuminated a small part of the building's interior and saw marijuana plants. He returned to the Avery County Sheriff's Department, executed an affidavit, obtained a search warrant from a magistrate, returned to the premises and seized the marijuana.

After making these findings, Judge Gray concluded, as a matter of law, that Detective Baker's first inspection of the building constituted a warrantless search in violation of the Fourth Amendment. He determined defendant had a reasonable expectation of privacy in the premises searched. He further adjudged that the search fell within no exception to the Fourth Amendment's requirement of a valid warrant. On the basis of his factual findings and legal conclusions, Judge Gray granted defendant's motion to suppress.

The Court of Appeals affirmed Judge Gray's decision. *State v. Tarantino*, 83 N.C. App. 473, 350 S.E. 2d 864 (1986). Subsequently, the United States Supreme Court decided *United States v. Dunn*, 480 U.S. ---, 94 L.Ed. 2d 326. The state petitioned for discretionary review in light of the *Dunn* decision. We granted the state's petition and remanded the case to the Court of Appeals for further consideration in light of *Dunn*. The Court of Appeals reaffirmed its previous decision, holding that the facts in the present case and those in *Dunn* are sufficiently distinguishable such that *Dunn*'s holding does not require a different result. *State v. Tarantino*, 86 N.C. App. at 442, 358 S.E. 2d at 132.

## II.

In *Dunn* the United States Supreme Court held that Drug Administration Enforcement agents did not violate the Fourth Amendment when they peered into the "essentially open front" of the defendant's barn and saw what they thought to be a drug lab-

oratory. *United States v. Dunn*, 480 U.S. at ---, 94 L.Ed. 2d at 334. The agents made their observations at night after crossing several fences encircling the barn, which was located about 60 yards from the defendant's ranch house residence. A locked wooden fence with a waist-high gate barred the agents from entering the barn. The barn's front section was open, covered only by netting material stretching from the barn's ceiling to the gate's top. By standing next to the netting and shining flashlights inside the barn, the agents acquired sufficient information to obtain a search warrant. Pursuant to the warrant, the agents seized chemicals and equipment and arrested the defendant. *Id.* at ---, 94 L.Ed. 2d at 332-34.

The primary issue confronting the Court in *Dunn*, as the Court of Appeals noted in its opinion below, was whether the agents' search violated the defendant's Fourth Amendment rights because the barn lay within the curtilage of his home. The Court held the barn did not lie within the house's curtilage, applying a four-part test drawn from prior cases. *Id.* at ---, 94 L.Ed. 2d at 334. However one might view the Court's determination of the curtilage question in *Dunn*, it has no bearing in the instant case, for no curtilage question is here presented.

The second issue addressed in *Dunn* was whether the defendant possessed a reasonable expectation of privacy, independent from his home's curtilage, in the barn and its contents. The Court assumed, for argument's sake, that the barn itself could not be entered or its contents seized without a warrant, but went on to hold that the officers properly peered into its interior over the front gate. It reasoned, on the basis of its resolution of the curtilage question, that the officers lawfully approached and stood next to the barn because the land surrounding it was a constitutionally unprotected "open field." From this vantage point the officers rightfully used flashlights to peer through the netting material covering the barn's opening. The Court held "the officers' use of the beam of a flashlight, directed through the essentially open front of [the defendant's] barn, did not transform their observations into an unreasonable search within the meaning of the Fourth Amendment." *United States v. Dunn*, 480 U.S. at ---, 94 L.Ed. 2d at 337. In so holding the Court drew support from its recent decision in *California v. Ciraolo* in which it stated "the Fourth Amendment 'has never been extended to require law en-

forcement officers to shield their eyes when passing by a home on a public thoroughfare'." *Id.* at ---, 94 L.Ed. 2d at 337 (quoting *California v. Ciraolo*, 476 U.S. 207, 213, 90 L.Ed. 2d 210, 216 (1986) ).

The *Dunn* decision, as the Court of Appeals correctly noted, does not alter the rule that the Fourth Amendment applies if a person exhibits a subjective expectation of privacy in the object of the challenged search, and that expectation is one which society is prepared to recognize as reasonable. *O'Conner v. Ortega*, 480 U.S. ---, ---, 90 L.Ed. 2d 714, 722 (1987); *California v. Ciraolo*, 476 U.S. at 211, 90 L.Ed. 2d at 215; *Smith v. Maryland*, 442 U.S. 735, 740, 61 L.Ed. 2d 220, 226-27 (1979). The Fourth Amendment applies to non-residential buildings to the extent they are not exposed to the public. *Marshall v. Barlow's Inc.*, 436 U.S. 307, 311, 56 L.Ed. 2d 305, 310 (1978); *United States v. Katz*, 389 U.S. 347, 351-52, 19 L.Ed. 2d 576, 582 (1967).

Consistent with this traditional approach, the Court in *Dunn* did not end its analysis by concluding the officers were in an open field when they made their observations; rather, it proceeded to examine the nature of the opening through which they made their observations to determine if this negated any reasonable expectation of privacy in the building's interior. Because the barn's interior was exposed to the public from an unprotected vantage point, the Court held that the officers' inspection was not a Fourth Amendment violation. *United States v. Dunn*, 480 U.S. at ---, 94 L.Ed. 2d at 337.

Applying traditional Fourth Amendment analysis to the instant case, we agree with the Court of Appeals that the trial court correctly concluded defendant had a reasonable expectation of privacy in the building which Detective Baker inspected. The building's padlocked front door, nailed back doors, and boarded windows indicate that defendant had a subjective expectation of privacy in his building's interior. This expectation was not unreasonable even though there were small cracks between the boards in the building's back wall. The presence of tiny cracks near the floor on the interior wall of a second-floor porch is not the kind of exposure which serves to eliminate a reasonable expectation of privacy. To hold otherwise would result in an unfairly exacting standard. It would require owners of non-residential

buildings who want to enjoy their Fourth Amendment rights to maintain their structures almost as airtight containers. The Supreme Court has never imposed such a standard, and we decline to do so in this case.

Nothing in the Supreme Court's *Dunn* decision suggests that an expectation of privacy is eliminated by quarter-inch cracks in the back wall of an otherwise sealed building. The inquiry in *Dunn* centered on the Fourth Amendment's requirements when law enforcement officials are faced with an open barn front obstructed only with see-through netting. The barn's interior was fully exposed to anyone standing next to the netting. *United States v. Dunn*, 480 U.S. at ---, 94 L.Ed. 2d at 338 (Brennan, J., dissenting). Under these circumstances the Court declared it would not require the officers to "shield their eyes" from that which was exposed to public view. *Id.* at ---, 94 L.Ed. 2d at 337.

By contrast, in the instant case, Detective Baker confronted a nearly solid wall when he entered defendant's porch. Boarded windows and nailed doors prohibited observation of the inside from all but the most rigorous scrutiny. To make his observations, Detective Baker had to bend and peer with a flashlight through quarter-inch cracks near the floor. Nothing indicates, as in *Dunn*, that had Detective Baker conducted his investigation during the day he could have viewed the building's interior without making the same searching inquiry. These facts distinguish this case from *Dunn* in a constitutionally significant way. Far from demanding Detective Baker to avert his eyes to avoid viewing the building's interior, the cracks near the porch floor required him to make a probing examination in order to see inside. Under these circumstances defendant's reasonable expectation of privacy remained intact.*

The reasonableness of defendant's expectation of privacy was not eliminated because the building's exterior evidenced a degree of neglect when Detective Baker made his observations. The Fourth Amendment's application to a non-residential building's interior is not diminished because its exterior reflects poor main-

---

* Defendant argues that it was unlawful for Detective Baker to enter the porch without a warrant. We decline to assess this contention's merit. Assuming, *arguendo*, that Detective Baker rightfully entered the porch, his subsequent action of peering into the building's interior was an impermissible warrantless search.

tenance. *See United States v. Burnette*, 648 F. 2d 1038, 1047 (9th Cir. 1983). On the contrary, the Fourth Amendment applies fully so long as the interior is not exposed to the public. *Marshall v. Barlow's Inc.*, 436 U.S. at 311, 56 L.Ed. 2d at 310; *United States v. Katz*, 389 U.S. at 351-52, 19 L.Ed. 2d at 582. Because defendant did not expose the interior of his building to the public, the Fourth Amendment applied with full force.

Our decision is consistent with those of other jurisdictions. In *Bradshaw v. United States*, the Fourth Circuit held that the defendant's reasonable expectation of privacy in his truck's interior was not eliminated by the presence of a crack where the back doors did not fit snugly. 490 F. 2d 1097, 1101 (4th Cir.), *cert. denied*, 419 U.S. 895, 42 L.Ed. 2d 139 (1974). The court concluded that police officers violated the Fourth Amendment when they looked through the crack without a warrant, saw moonshine whiskey jugs, and seized them. The court acknowledged that the officers had a right to approach and stand next to the truck, but it concluded they went beyond lawful investigation when peering through the small space. *Id.* In *State v. Kaaheena*, the Hawaii Supreme Court concluded the defendant's Fourth Amendment rights were violated when the police stood on a crate and looked through a one-inch hole in the drapes and blinds of a building which housed a "commercial establishment and some rental apartments." 575 P. 2d 462, 466 (1978). Although the police made their observations from a public vantage point, the court held that the search was impermissible because the defendant maintained his reasonable expectation of privacy in the building's interior. *Id.* at 467; *see also Kroehler v. Scott*, 391 F. Supp. 1114 (E.D. Pa. 1975) (violation of Fourth Amendment for officers to peer through small ceiling vents); *Lorenzana v. Superior Court of Los Angeles County*, 9 Cal. 3d 626, 511 P. 2d 33, 108 Cal. Rptr. 585 (1973) (officers violated Fourth Amendment by peering through drawn curtains); *People v. Triggs*, 8 Cal. 3d 884, 506 P. 2d 232, 106 Cal. Rptr. 408 (1973) (illegal search where officers in maintenance access area peered through vents); *People v. Lovelace*, 172 Cal. Rptr. 65, 116 Cal. App. 3d 541 (1981) (reasonable expectation of privacy not eliminated by knotholes and cracks in six foot high wooden fence); *State v. Biggar*, 716 P. 2d 493 (1986) (reasonable expectation of privacy not eliminated by crack one-half to one inch wide where toilet stall door did not close properly).

State v. Tarantino

In conclusion, we agree with the Court of Appeals that the decision by the Supreme Court in *United States v. Dunn* does not require a reversal of the trial court's decision to grant defendant's motion to suppress evidence taken from his building. Both the trial court and the Court of Appeals reached the right result on the search issue for the right reasons. The decision below, therefore, is

Affirmed.

Justice MITCHELL dissenting.

The defendant has at no time contended in the present case that any step in either the search for or the seizure of his marijuana violated any provision of the Constitution of North Carolina or any statute. Instead, the defendant raises only the federal question of whether the trial court was required to suppress the evidence concerning the marijuana seized from his building, because probable cause for the search warrant was obtained in violation of the Fourth Amendment to the Constitution of the United States.

The majority relies upon the decision of the Supreme Court of the United States in *Dunn v. United States*, 480 U.S. ---, 94 L.Ed. 2d 326 (1987) in resolving the Fourth Amendment question presented here. I am convinced that the principles stated and applied in *Dunn* do not require exclusion of evidence concerning the marijuana seized in the present case. Therefore, I dissent.

I begin by assuming in the present case, as the Supreme Court assumed in *Dunn*, that the building in which the contraband was located was protected by the Fourth Amendment. 480 U.S. at ---, 94 L.Ed. 2d at 337. However, I believe that any expectation of privacy the defendant may have had in the present case was much less "reasonable" than that of the defendant in *Dunn*.

It is true that in *Dunn*, the Supreme Court held *for purposes of Fourth Amendment search and seizure analysis* that the barn lay outside the curtilage of the defendant's home. *But cf. State v. Frizzelle*, 243 N.C. 49, 51, 80 S.E. 2d 725, 726 (1955) (applying State common law); *State v. Browning*, 28 N.C. App. 376, 379, 221 S.E. 2d 375, 377 (1976) (same). However, the evidence in *Dunn* revealed that the barn was a part of the same small Texas ranch

on which the defendant's residence was located and was only sixty yards from the residence. The residence and barn

> are located in a clearing surrounded by woods, one-half mile from a road, down a chained, locked driveway. Neither the farmhouse nor its outbuildings are visible from the public road or from the fence that encircles the entire property. Once inside this perimeter fence, it is necessary to cross at least one more "substantial" fence before approaching Dunn's farmhouse or either of his two barns . . . .

*United States v. Dunn*, 480 U.S. at ---, 94 L.Ed. 2d at 338 (Brennan, J., dissenting). The front of the barn involved in *Dunn* was enclosed by a wooden fence. The back and sides of the barn

> "were composed of brick, metal siding, and large metal sliding doors and were completely enclosed. The front of the barn was partially composed of a wooden wall with windows. The remainder was enclosed by waist-high wood slatting and wooden gates. At the time of [the] agent['s] visits . . ., the top half of the front of the barn was covered by a fishnet type material from the ceiling down to the top of the locked wooden gates. To see inside the barn it was necessary to stand immediately next to the netting [under the barn's overhang]. From as little as a few feet distant, visibility into the barn was obscured by the netting and slatting." 766 F. 2d 880, 883 (CA5 1985).

*Id.*

Since the barn and adjacent barnyard in *Dunn* were held to be outside the curtilage, the Supreme Court concluded that the officers had observed the interior of the barn from an open field not protected by the Fourth Amendment. Although the officers in *Dunn* could not see inside the barn—assumed to be protected by the Fourth Amendment—until they went under the eaves and stood immediately next to the netting used to cover the only open portion, the Supreme Court concluded that no unreasonable search was involved.

The Supreme Court has held that:

[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own

home or office, is not a subject of Fourth Amendment protection . . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

*Katz v. United States*, 389 U.S. 347, 351-52, 19 L.Ed. 2d 576, 582 (1967). On the facts of *Dunn*, the Supreme Court indicated that the defendant had not sufficiently sought to preserve his privacy interest in his barn and the immediately adjacent area because he "did little to protect the barn area from observation by those standing in the open fields." *United States v. Dunn*, 480 U.S. at ---, 94 L.Ed. 2d at 336.

Any expectation of privacy the defendant in the present case may have had in the closed country-store building was, by any objective test, much less "reasonable" than the defendant's expectation of privacy in *Dunn*. In *Dunn* the barn was only sixty yards from the defendant's residence. The closed country-store in the present case was not near any dwelling house and was the only structure on the property. In *Dunn* the defendant took extensive steps to ensure his privacy by blocking his driveway with a chain and lock located approximately one-half mile from the barn, fencing the perimeter of his property, fencing the barn itself, and shielding the only open part of the barn with a locked gate and netting material. The defendant in the present case erected no barriers on his property, but simply placed a large quantity of marijuana in the old empty store and closed the door. In *Dunn* the officers were required to walk a great distance from the road and climb perimeter and interior fences before they could position themselves under the eaves of the barn and close enough to see through the netting material into the interior. Here, the investigating officer merely had to walk a relatively short distance up an unobstructed path and step onto the essentially open back porch of the old store building. In order to see into the building, he had merely to stoop or bend at the waist and look through one of the open spots in the rear of the building.

I am convinced that Dunn did more to protect his barn from observation than was done by the defendant here, and Dunn's expectation of privacy was far more reasonable than any expectation of privacy this defendant may have had. I certainly am convinced that any distinction between this case and *Dunn* on the

ground that the officer here had to bend at the waist to see through an open slit in the wall, while in *Dunn* the officers had to go under the eaves of the barn and position themselves close enough to peek through Dunn's netting material, could not be reasonably viewed as a distinction favorable to this defendant. If we are to follow *Dunn* in resolving the purely federal question presented, I believe we must hold that the information obtained by looking through the back of the building was not obtained in violation of the Fourth Amendment, and it properly provided probable cause for the issuance of the search warrant. Accordingly, I dissent.

Justices MEYER and WEBB join in this dissenting opinion.