**2025 IL 130286**


# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS


(Docket No. 130286)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CASEY ROBERT HAGESTEDT, Appellant.


*Opinion filed February 6, 2025.*


JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet, Holder White, Cunningham, and Rochford concurred in the judgment and opinion.

Justice Neville specially concurred, with opinion.


## OPINION

¶ 1    Defendant, Casey Robert Hagestedt, was convicted of unlawful possession of a controlled substance after a stipulated bench trial. He filed a direct appeal, challenging the denial of his motion to suppress evidence and resulting conviction. The Second District affirmed defendant's conviction. 2023 IL App (2d) 210715-U

(Hutchinson, J., specially concurred, and McLaren, P.J., dissented). Defendant sought leave to appeal to this court, contending that the Du Page County circuit court erred in denying his motion to suppress because the contraband was not in plain view while police officers investigated a gas leak in his home. Rather, the contraband was discovered pursuant to an unreasonable warrantless search. For the following reasons, we reverse the judgments of the lower courts. We conclude that the contraband, which was located in a chained and locked cabinet in defendant's kitchen, was not plainly visible, so the trial court erred in denying defendant's motion to suppress evidence.

¶ 2                                  BACKGROUND

¶ 3        Police officers entered a townhome without a warrant to assist the fire department in the investigation of a reported gas leak. During the investigation of the gas leak, contraband was discovered in a kitchen cabinet. Defendant was arrested and charged with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2016)), unlawful possession of between 30 and 100 grams of cannabis (720 ILCS 550/4(c) (West 2016)), and misdemeanor possession of drug paraphernalia (720 ILCS 600/3.5 (West 2016)).

¶ 4        Defendant filed a motion to quash his arrest and suppress the evidence seized from the townhome. Defendant argued that, even if the officers were properly in his home to assist the fire department in investigating a gas leak, the police officers went beyond the scope of the community caretaking or emergency assistance exceptions to the warrant requirement when they looked inside a locked kitchen cabinet in defendant's home. Their actions of looking inside the cabinet amounted to searches in violation of the fourth amendment (U.S. Const., amend. IV). A search warrant was obtained based on the items observed during those unlawful searches, so defendant contended that all items seized during the execution of the search warrant must be suppressed.

¶ 5        Robert Liebich, a police officer with the Village of Roselle, testified at the suppression hearing. Liebich was dispatched on October 19, 2017, to assist the fire department with a reported gas leak at a townhome. When Liebich arrived at the townhome, the fire department was already there, had determined that the source of the gas odor was the stove, and had begun ventilating the townhome. The odor

of gas was still fairly strong, and Liebich was not sure if the fire department had already shut off the gas source. Thus, Liebich entered the townhome with the intention of checking on the stove. Liebich proceeded directly to the kitchen and examined the stove, not observing any damage to the stove. As Liebich turned to exit the kitchen, he observed an upper cabinet directly across from the stove that was secured shut with a chain and a padlock. Liebich did not touch the cabinet, but he observed that it was ajar about one inch, and he had to use his flashlight and an angled view to see inside the cabinet through the gap. Liebich testified that he saw a green leafy substance in a container, which he believed to be cannabis, and some syringes. Liebich identified a photograph of the cabinet at the suppression hearing and agreed that the contents could not be viewed looking straight at the cabinet. To see the view of the inside of the cabinet that Liebich had observed, the photograph would have had to be taken from an angle. Liebich identified defendant as the resident of the townhome on the day of the gas leak.

¶ 6        Kyle Stanish testified that he was also employed as a police officer for the Village of Roselle and responded with Liebich to the reported gas leak on the morning of October 19, 2017. Upon arriving, Stanish was updated regarding the gas leak by the fire department personnel and informed that there was a man inside the townhome who was refusing to leave. Paramedics felt it necessary for defendant to come out of the townhome and be evaluated. Stanish proceeded directly toward the bedrooms in the townhome, and he identified defendant as the man who was lying down in one of the bedrooms inside the townhome. While Stanish was talking to defendant, Liebich called out from the kitchen. Stanish went to the kitchen and observed a chained and padlocked cabinet. Stanish testified that one of the cabinet doors was ajar about one or two inches, but he could not see inside the cabinet from his viewing angle. The chain securing the cabinet doors was wrapped tightly around the cabinet door handles, so when Stanish pulled on the cabinet doors, the doors only opened another inch to two inches. At that point, Stanish observed a plastic container with what he believed was cannabis inside the cabinet. Stanish also noted a camera on top of the refrigerator, pointed directly at the padlocked cabinet. Stanish returned to the bedroom and asked defendant about the contents of the cabinet, and defendant denied all knowledge. Stanish escorted defendant out of the townhome. Stanish later reentered the townhome, at which time he detected a strong odor of cannabis.

¶ 7        While outside with defendant, Stanish talked to his superiors and determined that a search warrant should be obtained for the townhome. According to Stanish, a search warrant was obtained based on what Liebich and Stanish observed in the cabinet. Officers executed the search warrant a couple of hours later. The items in the cabinet were seized pursuant to the warrant.

¶ 8        The trial court denied defendant's motion to quash his arrest and suppress the evidence seized from the kitchen cabinet. The trial court concluded that there was no violation of the community caretaking warrant exception because the officers entered the townhome to aid the fire department in an emergency and Liebich legitimately observed the contents of the cabinet while providing aid. The use of a flashlight fell within the plain view doctrine. Stanish, who pulled on the cabinet door, conducted a search in violation of the fourth amendment, but the error was harmless because Liebich had already made his observations. Also, there was testimony that Stanish could smell the odor of cannabis when he reentered the townhome. The search warrant was not before the court, but the trial court had the testimony that supported the search warrant. Under those circumstances, the court determined that it could not find the search warrant invalid and denied the motion to suppress. Defendant's motion to reconsider was denied.

¶ 9        The matter proceeded to a stipulated bench trial on the charge of unlawful possession of a controlled substance. The State stipulated that it would call Stanish, who would testify that he observed the kitchen cabinet while responding to a report of a gas leak. Stanish would testify that he could observe containers with a green leafy substance through the gap between the cabinet door and the cabinet frame. He would also testify that, once the gas odor was cleared from the residence, he detected the odor of cannabis. Detective Sergeant Rob Gates would testify that he applied for a search warrant after the observations made by Stanish. Gates executed the search warrant on the townhome and recovered suspected cannabis and 37 small bags containing suspected heroin residue. Gates also interviewed defendant, during which defendant indicated that he had access to the cabinet, he was aware of the contents of the cabinet, and the bags seized were his. Defendant told the officers that the townhome was his cousin's residence and defendant had been living there for a few days. A forensic scientist would testify that the bags tested positive for a mixture of heroin, fentanyl, and cocaine. Defendant was found guilty of unlawful

possession of a controlled substance. The State nol-prossed the other two counts, and defendant was sentenced to 180 days in jail and 30 months' probation.

¶ 10    On appeal, defendant challenged the denial of his motion to suppress evidence and his resulting conviction. Defendant argued that Liebich's actions exceeded the scope of the community caretaking exception that afforded the officers warrantless entry into defendant's home. Defendant also argued that Liebich conducted a search prohibited by the fourth amendment when Liebich used his flashlight to peer into a closed and locked cabinet because its contents could not be said to have been in plain view. The Second District affirmed the denial of defendant's motion to suppress evidence and his resulting conviction. The concurring justices concluded that Liebich's entry into the residence was permissible under either the community caretaking or the emergency aid exception. 2023 IL App (2d) 210715-U, ¶ 50 (opinion of Birkett, J.); *id.* ¶ 84 (Hutchinson, J., specially concurring). The lead opinion noted that the United States Supreme Court precedent holds that the "use of artificial illumination to view objects does not constitute a search under the Fourth Amendment." *Id.* ¶ 45 (opinion of Birkett, J.). Defendant's argument that the officer's looking into the cabinet with his flashlight was a search was forfeited because defendant did not cite any precedent in support of the proposition that the flashlight transformed a plain view observation into a search. *Id.* Despite the forfeiture, the lead opinion held that "[u]nder the plain-view doctrine as articulated in *Horton* [*v. California*], 496 U.S. [128,] 136-140 [(1990)], and [*People v.*] *McCavitt*, 2021 IL 125550, ¶ 111, Liebich did not violate the Fourth Amendment when he looked with his flashlight into the cabinet." 2023 IL App (2d) 210715-U, ¶ 66. Liebich did not move anything to look into the cabinet, and he did not violate the fourth amendment in arriving at the place where he could view the cabinet's contents. *Id.* ¶¶ 66, 73. The fact that Liebich could only peer into the cabinet by looking inside at an angle and with a flashlight did not make his actions a search under the fourth amendment. *Id.* ¶ 66. Thus, the appellate court affirmed defendant's conviction.

¶ 11    Justice Hutchinson wrote separately, agreeing that there was no fourth amendment violation. *Id.* ¶ 85 (Hutchinson, J., specially concurring). The officers were properly in defendant's home to provide emergency aid, and Liebich did not manipulate the cabinet doors to see inside. *Id.* She wrote separately to voice her concerns regarding the process, specifically, that defendant filed his motion to

- 5 -

suppress the evidence seized pursuant to a warrant, but the search warrant affidavit and the search warrant were not provided to the court. *Id.* ¶¶ 82-83.

¶ 12    Presiding Justice McLaren dissented. He argued that using the flashlight to peer inside a clearly locked and imperfectly closed cabinet inside defendant's home was a search in violation of the fourth amendment. *Id.* ¶ 122 (McLaren, P.J., dissenting). "It is the diversion from the officer's objective and the exposure of concealed things that are the basis for the Fourth Amendment violation, not the mere fact that the officer moved the items." *Id.* ¶ 123. He concluded that the contraband was not in plain view and that defendant's expectation of privacy was breached when the officer looked inside the cabinet without a warrant. *Id.* ¶¶ 98, 106. We granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023).

¶ 13                                    ANALYSIS

¶ 14    In reviewing a ruling on a suppression motion, we apply the familiar two-part standard of review. *People v. McCavitt*, 2021 IL 125550, ¶ 53. Under that standard, we give deference to factual findings and will reverse those findings only if they are against the manifest weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). The ultimate legal ruling on the suppression motion is reviewed *de novo*. *Id.* The State contends that a trial court's determination whether evidence was in plain or open view is often a factual finding. See, *e.g.*, *People v. Lewis*, 363 Ill. App. 3d 516, 531 (2006) (trial court's finding that evidence was in plain view was a factual finding). In this case, however, the relevant facts are undisputed;[1] the only question presented is the legal conclusion of whether Liebich's actions constituted a search.

¶ 15    When a defendant files a motion to suppress evidence, he bears the burden of proof at a hearing on that motion. *People v. Gipson*, 203 Ill. 2d 298, 306 (2003); 725 ILCS 5/114-12(b) (West 2016) ("The judge shall receive evidence on any issue of fact necessary to determine the motion and the burden of proving that the search

---

[1]Even the fact that Stanish detected the odor of cannabis in defendant's townhome is undisputed by defendant, although it is unclear from the record whether it was a fact relied upon in seeking the search warrant. For our purposes, we accept the factual finding that Stanish detected the odor of cannabis and that this fact was included in the affidavit for the search warrant.

and seizure were unlawful shall be on the defendant."). A defendant must make a *prima facie* case that the evidence was obtained pursuant to an illegal search or seizure. *Gipson*, 203 Ill. 2d at 306-07. A *prima facie* showing means that the defendant has the primary responsibility for establishing the factual and legal bases for the motion to suppress. *People v. Berg*, 67 Ill. 2d 65, 68 (1977). Where the basis for the motion is an allegedly illegal search, the defendant must establish both that there was a search and that it was illegal. *Id.* If a defendant makes a *prima facie* case, the burden shifts to the State to present evidence to counter the defendant's *prima facie* case. *Gipson*, 203 Ill. 2d at 307. "However, the ultimate burden of proof remains with the defendant." *People v. Brooks*, 2017 IL 121413, ¶ 22.

¶ 16    The fourth amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Similarly, article I, section 6, of the Illinois Constitution provides that the "people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches [and] seizures." Ill. Const. 1970, art. I, § 6. Under our limited lockstep doctrine, we construe the search and seizure clause of our state constitution in accordance with the United States Supreme Court's interpretation of the fourth amendment unless any of the narrow exceptions to lockstep interpretation apply. *People v. Holmes*, 2017 IL 120407, ¶ 24. Neither party has argued that such an exception applies in this case, so we will consider both state and federal precedent.

¶ 17    The State argues that, in this case, there was no search subject to the fourth amendment. Police officers were present in the home to investigate the gas leak, and the actions of Liebich in looking in an open cabinet door as he turned to leave the kitchen did not amount to a search. Rather, the contents of the cabinet were openly or plainly visible. The State also contends that fourth amendment rights are personal rights and defendant failed to prove that he had a reasonable expectation of privacy in the contents of the kitchen cabinet.

¶ 18    Defendant argues that, although Liebich was properly in the townhome's kitchen to check on the stove, Liebich exceeded and abandoned that role when he used his flashlight to peer inside a visibly chained and locked cabinet that was slightly ajar. The acts necessary to view the contents of the cabinet indicated that the contents were not plainly visible, and those acts constituted a warrantless

- 7 -

search.

¶ 19                      A. Reasonable Expectation of Privacy

¶ 20    "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.' " *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). "Our analysis [of fourth amendment cases] begins and ends, therefore, with the question of whether the defendant has established a legitimate expectation of privacy in the place searched." *People v. Lindsey*, 2020 IL 124289, ¶ 16. "To claim protection under the fourth amendment, a person must have exhibited an actual subjective expectation of privacy in the place searched or thing seized, and this expectation must be one that society is willing to recognize as reasonable." *McCavitt*, 2021 IL 125550, ¶ 59. There are a number of factors to consider when evaluating whether a defendant has established that he has a legitimate expectation of privacy in a place or a thing, including

> "(1) property ownership, (2) whether the defendant was legitimately present in the area searched, (3) the defendant's possessory interest in the area searched or the property seized, (4) prior use of the area searched or property seized, (5) the ability to control or exclude others' use of the property, and (6) a subjective expectation of privacy in the property." *Id.* ¶ 60.

¶ 21    In this court, for the first time in the proceedings, the State argues that defendant failed to prove that he had a cognizable privacy interest in the townhome, its kitchen, or the kitchen cabinet, sufficient to assert a fourth amendment violation. The State notes that defendant was present in the townhome when police arrived, but defendant presented no evidence at the suppression hearing that he owned, rented, or was a guest in the townhome. Defendant also failed to present any evidence that he used the kitchen cabinet, he secured the cabinet, or that he had a key to the padlock on the cabinet. The State acknowledges that it did not make this argument below, in either the trial court or the appellate court. In support of raising the argument at this stage, the State points to the well-established rule that an " ' "appellee may urge any point in support of the judgment on appeal, even though not directly ruled on by the trial court, so long as the factual basis for such point was before the trial court." ' " *Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶ 31

(quoting *Beahringer v. Page*, 204 Ill. 2d 363, 370 (2003), quoting *Shaw v. Lorenz*, 42 Ill. 2d 246, 248 (1969)). Defendant contends that the State forfeited the argument by failing to make the objection at any time in the trial court.

¶ 22 Fourth amendment rights, including the right to be free from unreasonable searches, are personal rights that can only be asserted by those whose rights have been violated by the search. *Alderman v. United States*, 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which *** may not be vicariously asserted"). In this case, defendant was charged with the knowing possession of the contraband found in the kitchen cabinet. Defendant's motion to suppress evidence did not challenge the possession element; rather, defendant alleged that the search of defendant's home was unreasonable.

¶ 23 A challenge to defendant's asserted interest in the cabinet and the contents of the cabinet was not raised by the State at the suppression hearing. In fact, the State argued at the suppression hearing that the items were seized from defendant's home and that the issue was whether law enforcement officers unreasonably searched defendant's home. See *People v. Franklin*, 115 Ill. 2d 328, 336 (1987) ("The general rule that a prevailing party may raise, in support of a judgment, any reason appearing in the record does not apply when the new theory is inconsistent with the position adopted below or the party has acquiesced in contrary findings."). If the State had objected to the allegation that the search occurred in defendant's home during the suppression proceedings, defendant would have had the opportunity to provide evidence in support of his allegation that he possessed sufficient interest in the townhome, and the cabinet, to object to the warrantless search. The trial court would then have made factual findings regarding possession. The State's failure to object during the suppression proceedings on the basis that defendant did not have a sufficient fourth amendment interest in the townhome, its kitchen, or the kitchen cabinet resulted in the forfeiture of such a challenge. See *People v. Holloway*, 86 Ill. 2d 78, 91 (1981) ("Had the State made a timely objection, defendant *** may have been able to satisfy the court that he did, in fact, possess an interest in the premises sufficient to give him standing to object to the warrantless entry.").

¶ 24 In addition, we find that defendant has sufficiently established a reasonable expectation of privacy in the kitchen cabinet. By chaining and locking a cabinet in his kitchen, defendant took actions to protect his privacy and had shown that he

sought to preserve the contents of the cabinet as private. See *People v. Neal*, 109 Ill. 2d 216, 221-22 (1985) (by concealing items in a pouch, and concealing the pouch itself, defendant exhibited a subjective expectation that the items would remain private). Society recognizes as reasonable a defendant's expectation of privacy in items concealed from plain view in closed containers, especially in a defendant's own home. *McCavitt*, 2021 IL 125550, ¶ 61; see *People v. Absher*, 242 Ill. 2d 77, 83 (2011) ("Although the fourth amendment protects an individual's privacy in a variety of settings, '[i]n none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home.' " (quoting *Payton v. New York*, 445 U.S. 573, 589 (1980))).

¶ 25                    B. What Constitutes a Search Under the Fourth Amendment?

¶ 26        A search conducted inside a home without a warrant is presumptively unreasonable under the fourth amendment. *People v. Aljohani*, 2022 IL 127037, ¶ 32; *Kentucky v. King*, 563 U.S. 452, 459 (2011); see *Florida v. Jardines*, 569 U.S. 1, 6 (2013) ("when it comes to the Fourth Amendment, the home is first among equals"). However, because reasonableness is " ' "the ultimate touchstone of the Fourth Amendment," ' " this presumption is subject to certain exceptions. *Aljohani*, 2022 IL 127037, ¶ 32 (quoting *King*, 563 U.S. at 459, quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). One such "exigency obviating the requirement for police officers to obtain a warrant" is where there is a " 'need to assist persons who are seriously injured or threatened with such injury.' " *Id.* ¶ 35 (quoting *Stuart*, 547 U.S. at 403); see *King*, 563 U.S. at 460 (identifying this exception to the warrant requirement as the "emergency aid" exception). Another possible exception to the warrant requirement is the community caretaking or public safety doctrine. See *Lewis*, 363 Ill. App. 3d at 523 (citing *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973), as the originator of the community caretaking or public safety exception to the warrant requirement for vehicles). But see *Caniglia v. Strom*, 593 U.S. 194, 196 (2021) (community caretaking duties do not "create[ ] a standalone doctrine that justifies warrantless searches and seizures in the home"). In this case, defendant concedes that it was reasonable for the police officers to enter defendant's townhome without a warrant, due to the reported gas leak.

¶ 27 Thus, it is undisputed that law enforcement officers were legitimately inside defendant's home in response to a reported gas leak. The primary issue for this court to determine is whether the items discovered inside the cabinet while the officers were inside the townhome should have been suppressed as the fruits of an unreasonable search. Defendant contends that the State exceeded or abandoned its emergency or caretaking role and Liebich's actions amounted to a warrantless search of the cabinet. The State argues that defendant failed to show that Liebich violated defendant's reasonable expectation of privacy by looking in the cabinet. The State contends that the cabinet door was ajar and the contraband was plainly visible to Liebich, so there was no search. The use of a flashlight was not a relevant fact to turn Liebich's observation into a search. The State conceded at oral arguments that, if we find Liebich's actions amounted to a search, then the search was not reasonable because it was unrelated to Liebich's purpose for being in the townhome.

> "JUSTICE ROCHFORD: How could this 'looking' be related to the purpose of [Liebich's] presence?
>
> THE STATE: There is no question that it is not related to the purpose. That's why the question is not whether it's an unreasonable search. If it was a search, then it would be unreasonable because it is not related to his purpose for being there."

¶ 28 "A 'search' has been defined recurrently by the court as a prying into hidden places for that which is concealed. Conversely, it is not a search to observe that which is in open view." *Berg*, 67 Ill. 2d at 68; see *Katz*, 389 U.S. at 351 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); *People v. Bombacino*, 51 Ill. 2d 17, 22 (1972) ("A search implies a prying into hidden places for that which is not open to view.").[2]

---

[2]We note that an officer's observation of an object left in plain or open view is distinguishable from the " 'plain view' " doctrine that justifies the seizure of an object. *Texas v. Brown*, 460 U.S. 730, 738 n.4 (1983). The former is generally not a fourth amendment search, while the latter is a doctrine limiting property seizures. *Id.* Information obtained from the former, though, may provide the basis for further police conduct. *Id.*

"[I]f contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

¶ 29    The State relies on *Arizona v. Hicks*, 480 U.S. 321 (1987), for its argument that there is a difference between observing something that was already visible and observing something only after exercising force to reveal it. In *Hicks*, police officers responded to the respondent's apartment after a bullet was fired through the floor of the respondent's apartment, striking and injuring a man in the apartment below. *Id.* at 323. Police officers entered the respondent's apartment, searching for the shooter, other victims, and weapons. *Id.* While in the respondent's apartment, one of the police officers noticed expensive stereo components that seemed out of place. *Id.* The officer read and recorded the serial numbers, moving some of the components in order to do so. *Id.* One item was seized immediately as stolen, while the remaining components were seized later pursuant to a warrant. *Id.* at 323-24. The respondent filed a motion to suppress the evidence that had been seized. *Id.* at 324. The trial court suppressed the evidence, and the appellate court affirmed, finding that the officer's act of obtaining the serial numbers was an additional search unrelated to the exigent circumstance of the shooting. *Id.* The United States Supreme Court affirmed, holding that merely inspecting those parts of the stereo components that were visible, while lawfully in the apartment, would not be an independent search because "it would have produced no additional invasion of respondent's privacy interest." *Id.* at 325. However, when the officer took action to view a concealed serial number by moving one of the components, he conducted a search. *Id.* at 324-25 ("taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry").

¶ 30    The State argues that *Hicks* supports its argument that Liebich did not conduct a search because Liebich did not touch the cabinet. Conversely, the State concedes that Stanish's actions—pulling on the cabinet doors—constituted a search, which was the conclusion reached by the trial court. Defendant contends that *Hicks* actually supports his argument that Liebich's actions of looking through a small

gap in a closed and locked cabinet with a flashlight were unrelated to Liebich's purpose for being in the kitchen, which produced a new invasion of defendant's privacy. We agree with defendant.

¶ 31    While the holding in *Hicks* concerned stereo equipment that was moved to expose the serial number, the holding was not specifically limited to whether the components were moved. Rather, the *Hicks* Court found that there was a new invasion of the respondent's privacy when the officer took action that was "unrelated to the objectives of the authorized intrusion." *Id.* at 325. In this case, the undisputed facts are that neither officer could see the contents of the cabinet without taking some action. Stanish's action was to pull the cabinet doors open wider. Liebich's actions were to use a flashlight and an angled view to peer into an approximately one-inch gap in an otherwise closed and locked cabinet. The question, then, is whether Liebich's actions were related to investigating the gas leak and whether those actions produced an additional invasion of defendant's privacy interests. See *People v. Mikrut*, 371 Ill. App. 3d 1148, 1153 (2007) (police officers expanded the scope of their lawful entry in defendant's home by proceeding into a bedroom when defendant was already secured in the living room).

¶ 32                        C. Was the Use of the Flashlight a "Search"?

¶ 33    The State contends that, even if it was necessary for Liebich to use a flashlight to observe the contents of the cabinet, that did not transform Liebich's observation into a search. In support, the State cites several cases that hold that the use of artificial means to illuminate a darkened area does not constitute a search. See *Texas v. Brown*, 460 U.S. 730, 739-40 (1983) (when initial traffic stop was valid, officer properly seized green balloon that was in plain view; officer's use of flashlight and change in position to look in the vehicle did not change plain view observation into fourth amendment search); *Bombacino*, 51 Ill. 2d at 22 (no search where an officer observed a bat by shining his flashlight through the window of a vehicle while looking for a murder suspect); *People v. Epperley*, 33 Ill. App. 3d 886, 889 (1975) ("use of artificial light to observe that which is in a position to be plainly seen does not alter the doctrine").

¶ 34    The State acknowledges that those cases involve officers using flashlights to illuminate objects inside automobiles, rather than objects in areas with greater

fourth amendment protections, like the home. See *Jardines*, 569 U.S. at 6 ("when it comes to the Fourth Amendment, the home is first among equals"); see also *Brown*, 460 U.S. at 740 ("There is no legitimate expectation of privacy [citations] shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers," so observation, even with a flashlight to illuminate the interior of the vehicle, was not a search); *Luedemann*, 222 Ill. 2d at 561 ("It is well settled that the use of a flashlight to illuminate a vehicle located on a public way is not a fourth amendment search."). The State argues, though, that other courts have held that the use of a flashlight while on the curtilage or inside the home does not change an open view observation into a search. See *People v. Echols*, 2024 IL App (2d) 220281-U, ¶ 109 (gun was in plain view where an officer was in a home checking on a parolee and observed an object by shining his flashlight through an open bedroom door); see also *United States v. Law*, 384 F. App'x 121, 123-24 (3d Cir. 2010) (there was nothing unreasonable about a police officer's use of a flashlight to enhance his vision by illuminating the threshold of an open closet to see the contents of an open bag partially inside the closet).

¶ 35　　As Presiding Justice McLaren's dissent notes, there is a difference between using a flashlight to illuminate appropriate areas pursuant to a warrant, or where probable cause has already been established, and using a flashlight to establish probable cause when an item is not identifiable without the flashlight. 2023 IL App (2d) 210715-U, ¶ 112 (McLaren, P.J., dissenting). Thus, in *Echols*, there was a search, but it was not an illegal search because it was conducted pursuant to a parole compliance check where standard fourth amendment protections did not apply. *Echols*, 2024 IL App (2d) 220281-U, ¶ 96. While conducting that search and illuminating inside an open bedroom door, a gun was in plain view, which authorized its seizure. *Id.* ¶¶ 7, 96.

¶ 36　　In *United States v. Dunn*, 480 U.S. 294, 298 (1987), police officers used flashlights in the evening to view the interior of a barn located outside the curtilage of a home. The Supreme Court held that observing the interior of the barn from an open field, through essentially an open door (it was secured with netting) with the assistance of flashlights at night, did not transform police observations into an unreasonable search. *Id.* at 304-05.

¶ 37 The Supreme Court of North Carolina distinguished *Dunn* in a case that involved a structure with boarded windows, a padlocked solid-wood front door, and boarded and nailed-shut back doors. *State v. Tarantino*, 368 S.E.2d 588 (N.C. 1988). That court found the key fact was the nature of the opening through which officers made their observations. *Id.* at 591. In *Dunn*, the defendant negated any reasonable expectation of privacy in the building's interior by using see-through netting and essentially leaving the barn's interior exposed. *Id.* In contrast, the padlocked, boarded, and nailed doors and windows indicated that the defendant in *Tarantino* had a subjective, reasonable expectation of privacy in his building's interior, and the detective had to use a flashlight to peer through quarter-inch cracks. *Id.* The *Tarantino* case further cited decisions from other jurisdictions that held that a defendant's reasonable expectation of privacy is not eliminated by small openings in otherwise closed areas. *Id.* at 592-93 (collecting cases).

¶ 38 We agree that the nature of the opening is an important consideration, and we find that the instant case is similarly distinguishable from *Dunn*. The cabinet in this case was inside the kitchen of defendant's home. The cabinet was not only locked, but it was also visibly chained and padlocked in the closed position. The cabinet was not secured with see-through netting or see-through glass panels. Rather, the cabinet had solid wood doors that were not only closed but also secured shut with a chain and a padlock.

¶ 39 Liebich took deliberate action that was unrelated to his authorized intrusion, which constituted an independent search. While the cabinet itself was in plain view, its contents were not. The cabinet was secured with a chain and a padlock, and the chain was wrapped tightly around the cabinet handles. Neither Stanish nor Liebich observed the contents of the cabinet prior to taking any action. As noted above, Stanish's action was to open the doors further, which the trial court correctly determined was a search. Liebich's action was to use his flashlight and an angled view through a small gap in an otherwise closed and locked cabinet. There was also no evidence that the gas leak was potentially coming from the locked cabinet. See *Mikrut*, 371 Ill. App. 3d at 1153 ("When officers have accomplished their caretaking purpose, they may not continue to expand the scope of an intrusion without additional justification."). Thus, Liebich was not looking for a gas leak in the cabinet, nor was the cabinet proximate to the stove so that the use of a flashlight to illuminate behind the stove would have illuminated the interior of the cabinet.

- 15 -

There was no testimony that the flashlight in this case was necessary to investigate the gas leak. *Cf. State v. Hite*, 642 So. 2d 55 (Fla. Dist. Ct. App. 1994) (deputy was in room with consent to inspect defendant's guns; use of a flashlight to illuminate partially open closet door in a dark room was reasonable). Rather, the officer saw an admittedly suspicious cabinet, locked with a chain, and used his flashlight to try to see in through a small gap. Liebich's resulting view, with the aid of the flashlight, "was embellished and not plain." 2023 IL App (2d) 210715-U, ¶ 114 (McLaren, P.J., dissenting). Based on those facts, we find that defendant manifested a subjective expectation of privacy from observations of the contents of the cabinet. Defendant's expectation that the contents of the cabinet were protected from observation was reasonable. Liebich's actions amounted to a focused intrusion outside of the circumstances that authorized his presence.

¶ 40                                    D. Odor of Cannabis

¶ 41        At the suppression hearing, Stanish testified that the search warrant was based upon what he and Liebich had observed inside the cabinet. In denying the motion to suppress, the trial court noted that, because the affidavit for the search warrant and the search warrant were not provided to the court, it was not entirely clear what information supported the search warrant. According to the testimony at the suppression hearing, though, the search warrant was based on both officers' observations when they looked into the locked cabinet. The trial court also relied on Stanish's testimony that he smelled the odor of cannabis when he reentered defendant's townhome. The trial court concluded that Stanish conducted an unreasonable search by moving the cabinet doors, so Stanish's observation of the interior of the cabinet could not support a search warrant. The trial court, however, then made the factual finding that the evidence supporting the search warrant was Liebich's observation of the interior of the cabinet and Stanish's detection of the odor of cannabis. As we concluded above, Liebich's observation of the interior of the kitchen cabinet constituted an unreasonable search. We also conclude that the trial court's factual finding that Stanish detected the odor of cannabis upon reentering the townhome does not, by itself, support the search warrant. While the evidence in the record was equivocal whether that fact was included in the affidavit for a search warrant, it was defendant's burden to prove that the search was illegal, so we accept that it was a fact included in the affidavit of the search warrant. See

*Gipson*, 203 Ill. 2d at 306-07 (defendant has the burden of making a *prima facie* case that evidence was obtained by an illegal search on a motion to suppress). However, even accepting that fact as true, that fact alone would not support the search warrant.

¶ 42   The analysis regarding the odor of cannabis is the same as above. Officers were only in defendant's home to carry out their community caretaking or emergency assistance role in investigating the gas leak. If Stanish reentered defendant's townhome, after the gas leak had been resolved and defendant had been removed from the premises but prior to executing the search warrant, Stanish would not be in a place that he was authorized to be. His caretaking purpose had already been accomplished. See *Mikrut*, 371 Ill. App. 3d at 1153. Reentering defendant's townhome was an action that was unrelated to the reason for his previously authorized presence and exceeded the scope of his license to be inside defendant's townhome. See *Hicks*, 480 U.S. at 325. Thus, Stanish's detection of the odor of cannabis was also pursuant to a warrantless search.[3] We also point out that, at the time of the events at issue here in 2017, the legislature had begun the process of decriminalizing and legalizing the use and possession of cannabis, so the detection of the odor of cannabis in a home no longer inherently indicated the commission of a crime. See *People v. Redmond*, 2024 IL 129201, ¶¶ 28-43 (tracking the evolution of cannabis laws in Illinois); see also 410 ILCS 130/25(a) (West 2016) (as of January 1, 2014, it is lawful for certain individuals with debilitating medical conditions to possess and use cannabis); 720 ILCS 550/4(a) (West 2016) (Cannabis Control Act was amended in 2016 (Pub. Act 99-697, § 40 (eff. July 29, 2016)), decriminalizing the possession of a small amounts of cannabis); *cf. People v. Hill*, 2020 IL 124595, ¶ 34 (acknowledging that, in 2017, the mere presence of cannabis for medical users may no longer be immediately attributable to criminal activity if not a violation of the Illinois Vehicle Code (625 ILCS 5/1-101 *et seq.* (West 2016))).

---

[3]We note that, if Stanish detected the odor of cannabis when he reentered the townhome to execute the search warrant, then clearly the search warrant was not based on that fact.

¶ 43                          E. Effect of Suppression

¶ 44        Defendant moved to suppress the evidence found in the kitchen cabinet on the basis that the search warrant was obtained based on an unlawful search. We conclude that, absent Liebich's visual observation of the contents of the cabinet and absent Stanish's detection of the odor of cannabis, defendant bore his burden of establishing that the evidence relied upon for the search warrant was insufficient to establish probable cause for the issuance of a search warrant for defendant's home.

¶ 45        The exclusionary rule may be invoked by the victim of an unlawful search when the State seeks to introduce evidence uncovered by that search. *People v. Lampitok*, 207 Ill. 2d 231, 241 (2003). Under the "fruit of the poisonous tree" doctrine, a fourth amendment violation is the poisonous tree, and any evidence obtained as a result of that violation is the fruit. *People v. Henderson*, 2013 IL 114040, ¶ 33. Such evidence is not *per se* inadmissible; it may be admissible if circumstances are such that there has been some intervening circumstance that attenuates or removes the taint of the original illegal act. *Id.* ¶¶ 33-34.

¶ 46        We have concluded that neither officer's actions supported the search warrant, so the trial court's denial of the motion to suppress evidence and quash defendant's arrest was in error. The search warrant was based upon the information gathered during unreasonable warrantless searches. Defendant's subsequent arrest and statement to police were obtained as a result of the unreasonable searches. The State points to no intervening circumstances that were sufficient to remove the taint from the original illegality. Thus, the evidence obtained from the unlawful search of defendant's kitchen cabinet was subject to suppression as fruit of the poisonous tree. Without that evidence, the State cannot prove the charge of unlawful possession of a controlled substance.


¶ 47                                CONCLUSION

¶ 48        The trial court erred in denying defendant's motion to quash his arrest and suppress the evidence found in the kitchen cabinet. Because the State would be unable to convict defendant at a new trial without the suppressed evidence, we reverse defendant's conviction outright and vacate his sentence. See *People v.*

*Lozano*, 2023 IL 128609, ¶ 47.

¶ 49   Judgments reversed.

¶ 50   JUSTICE NEVILLE, specially concurring:

¶ 51   I fully concur with the majority's reasoning and conclusions that police violated Hagestedt's rights protected by article I, section 6, of the Illinois Constitution (Ill. Const., art. I, § 6) and by the fourth amendment to the United States Constitution (U.S. Const., amend. IV). I also concur with the majority's reasoning and conclusion that the constitutional violations require reversal of Hagestedt's conviction.

¶ 52   I disagree with the opinion only insofar as the majority relies on the lockstep doctrine to reach its result. I write separately to reassert the position I stated in *People v. Sneed*, 2023 IL 127968, ¶¶ 133-68 (Neville, J., dissenting), and *People v. Clark*, 2024 IL 127838, ¶¶ 118-25 (Neville, J., dissenting): this court should overrule *People v. Caballes*, 221 Ill. 2d 282, 288-317 (2006), insofar as that case imposed the limited lockstep doctrine on Illinois courts. This court must recognize its responsibility as the final interpreter of the Illinois Constitution and treat United States Supreme Court decisions interpreting the United States Constitution as persuasive authority, following the United States Supreme Court only when its reasoning persuades us that it has struck a fair balance between the rights of Illinois citizens and the interests of the government, in accord with the words of the Illinois Constitution. See *People v. Rolfingsmeyer*, 101 Ill. 2d 137, 143-47 (1984) (Simon, J., specially concurring); *People v. Tisler*, 103 Ill. 2d 226, 259 (1984) (Clark, J., specially concurring).