NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250778-U

NO. 4-25-0778

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 8, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Carroll County |
| CARLA K. SIEGWARTH, | ) | No. 25CF23 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | John J. Kane, |
| | ) | Judges Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, finding defendant did not voluntarily consent to a
warrantless search of her person.

¶ 2    In July 2025, following a hearing, the trial court granted defendant Carla K.

Siegwarth's motion to suppress evidence. On appeal, the State argues the court erred because

defendant had consented to the search. We disagree and affirm.

¶ 3                              I. BACKGROUND

¶ 4    In March 2025, after a traffic stop, defendant was charged by information with

unlawful possession of methamphetamine (720 ILCS 646/60(a), (b)(1) (West 2024)) and

possession of drug paraphernalia (720 ILCS 600/3.5 (West 2024)). On June 24, 2025, defendant

filed a motion to suppress evidence arguing police officer Joel Colon lacked probable cause to

search her person, thereby making the subsequently discovered methamphetamine found within

her pockets inadmissible evidence. A hearing on defendant's motion occurred the following day.

¶ 5        At the hearing, Colon testified he was patrolling on March 26, 2025, for the Savanna Police Department. He was driving his marked police vehicle when he observed a red truck with an Iowa license plate. Colon stated he knew who owned the truck but did not know who was driving. The driver failed to signal within 100 feet of turning at an intersection, so he initiated a traffic stop. Upon approaching the truck, Colon stated he recognized defendant as the driver. A video of Colon's interactions with defendant from his body-worn camera was admitted into evidence and played for the trial court.

¶ 6        The video was just over 11 minutes long. It showed Colon approaching the vehicle and requesting defendant's driver's license and insurance. Colon asked defendant if there were any "drugs or weapons" in the vehicle. Defendant responded that there were not. Colon stated he did not believe her. Defendant provided proof of insurance but said her driver's license had been stolen. Colon requested he be allowed to search the vehicle. Defendant shrugged and then said no because the vehicle belonged to her sister. Colon requested defendant exit the vehicle and directed her to stand in front of his police vehicle. Defendant insisted there was nothing in the truck and was concerned Colon was about to search it. As Colon was directing defendant to stand in front of his vehicle, he asked her if she "underst[ood] the commands" he was giving her. Colon also had the passenger exit the truck and stand in front of his police vehicle. Colon requested dispatch check on defendant's license status. At timestamp 6:28 in the video, dispatch informed Colon that defendant was "clear and valid." Colon then asked dispatch to check the status of the passenger. Shortly after the eight-minute mark, dispatch informed Colon the passenger was "clear and not valid." Colon then requested dispatch check the registration status for the truck. Shortly thereafter, dispatch informed Colon that the vehicle had a

valid Iowa registration.

¶ 7    Colon said to defendant, "You said there's nothing in there" referring to the truck. Defendant confirmed there was nothing in the truck but told Colon he could search it because she was "not gonna sit here and argue" with him. Colon confirmed twice with defendant that she was giving him permission to search. She repeated she did not want to argue with him and just wanted to go home. Defendant repeated there was nothing in the vehicle and asked Colon not to "rip it all apart." Colon said, "You said I can look through it, I'm going to look through it. If you ain't got nothing, you're going to be on your way," and, "This ain't that hard, [defendant], we've been down this road before."

¶ 8    At timestamp 9:49, Colon asked defendant if she had anything in her pockets "that [he] need[ed] to know about." She said, "No." Colon said, "You guys want to take whatever you got in your pockets and just show me." Defendant sighed, said, "Ok," and began emptying the contents of her pockets. She emptied her left coat pocket, displaying money and what appeared to be a credit card. Colon then asked defendant, "What's in the sweater pocket?" She said it was her phone and removed it from the pocket. She indicated she had another pocket and emptied her right coat pocket. Colon observed what appeared to be a plastic baggie containing a substance. Colon placed defendant under arrest.

¶ 9    Following the playing of the video from his body-worn camera, Colon conceded dispatch had informed him defendant's license was valid. On cross-examination, Colon said he had defendant step out of her vehicle because he observed "possible signs of impairment." He said defendant had delayed speech and glassy eyes and noted she failed to put the vehicle in park when she exited. On redirect examination, Colon confirmed he never searched defendant or the passenger for weapons, as his prior contacts with defendant had not involved weapons.

¶ 10　　　　　Defendant testified she was driving her daughter home when she was pulled over by Officer Colon. She said Colon asked her to exit the vehicle and stand in front of his police vehicle. She denied ever being asked to perform field sobriety tests or being told by Colon she was suspected of driving under the influence of alcohol. She recalled Colon asked to search her vehicle. She declined because it was her sister's truck, and he had already searched it multiple times. She said she eventually let him search the truck because she "just wanted to go home" and "thought it would be quicker just to let him search it." She stated Colon did not find anything during the search.

¶ 11　　　　　Prior to searching the vehicle, Colon had told her to empty her pockets without explaining why. When she asked for the reasons, she said Colon responded by saying "Because I told you to." She stated she felt compelled to empty her pockets and said, "[H]e's going to make me do it anyway. He's not going to—because he's done it multiple times."

¶ 12　　　　　On cross-examination, defendant conceded she allowed Colon to search the vehicle. When asked if she voluntarily emptied her pockets, she said, "Well, I felt like I had to." When asked if she recalled telling Colon she had one more pocket and whether it was emptied voluntarily, she said, "Yeah, I guess. I felt like I had to." She also conceded she did not signal within 100 feet of turning.

¶ 13　　　　　The parties reconvened on July 23, 2025, for the trial court's decision on defendant's motion. The court found the traffic stop was lawful and Colon ordering defendant out of the vehicle did not infringe on her fourth amendment rights (see U.S. Const., amend. IV). The court also found Colon's request to search defendant's vehicle "did not unnecessarily prolong or illegally prolong the traffic stop." Regarding Colon's request for defendant to empty her pockets, the court found she did not consent to a search of her pockets. The court concluded

- 4 -

Colon's search was not a "protective frisk" to determine if she had weapons. The court cited several cases: *People v. Spann*, 237 Ill. App. 3d 705 (1992), *United States v. Pope*, 686 F.3d 1078 (2012), and *United States v. Winsor*, 846 F.2d 1569 (1988). The court stated:

> "And the point there was *Winsor* supports the proposition that a Fourth Amendment search occurs when police command a person to reveal something in which he would otherwise have a reasonable expectation of privacy, and that thing or area is revealed as a result of that command.
>
> Accordingly, the search of [the defendant in *Pope*] was justified, they found, notwithstanding the officer's failure to obtain a warrant if there was probable cause to arrest [the defendant]. Well, that's not the case here: There was no probable cause to arrest [defendant] for anything other than giving her two traffic citations.
>
> There was high risk that the evidence would be destroyed. That's exigent circumstances. In that case—in the *Pope* case, he admitted he had marijuana in his pocket. In our case, [defendant] never admitted having any illegal contraband in her pockets.
>
> And, three, the search was commensurate with the circumstances necessitating the intrusion. Here, Officer Colon simply told [defendant] to empty her pockets without a reason given, which you can't do, based on these cases."

¶ 14    The trial court granted defendant's motion to suppress. The State asked a

clarifying question: "So you found that the—when the officer—I guess you found that he commanded her to take the stuff out of her pockets, not a request, correct?" The court responded, "I found—the way I look at it, she didn't have a choice. She was detained." The court noted that when defendant was exiting her vehicle, Colon said to her, "[D]o you understand the commands I'm giving you. He used that word."

¶ 15        The State filed a certificate of impairment, and this appeal followed.

¶ 16                            II. ANALYSIS

¶ 17        "In determining whether a trial court has properly ruled on a motion to suppress, findings of fact and credibility determinations made by the trial court are accorded great deference and will be reversed only if they are against the manifest weight of the evidence." *People v. Slater*, 228 Ill. 2d 137, 149 (2008). We review *de novo* the court's ultimate decision whether to grant or deny a motion to suppress. *People v. Drain*, 2023 IL App (4th) 210355, ¶ 24.

¶ 18        Both the Illinois and United States Constitutions prohibit unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. "[T]he touchstone of the fourth amendment is reasonableness, which is measured objectively by examining the totality of the circumstances surrounding a police officer's encounter with a citizen." *People v. Lake*, 2015 IL App (4th) 130072, ¶ 28. A defendant may move to suppress illegally seized evidence. 725 ILCS 5/114-12 (West 2024). At the hearing on a defendant's motion to suppress:

> "A defendant must make a *prima facie* case that the evidence was
>
> obtained pursuant to an illegal search or seizure. [Citation.] A
>
> *prima facie* showing means that the defendant has the primary
>
> responsibility for establishing the factual and legal bases for the
>
> motion to suppress. [Citation.] Where the basis for the motion is an

allegedly illegal search, the defendant must establish both that there was a search and that it was illegal. [Citation.] If a defendant makes a *prima facie* case, the burden shifts to the State to present evidence to counter the defendant's *prima facie* case. [Citation.] However, the ultimate burden of proof remains with the defendant." (Internal quotation marks omitted). *People v. Hagestedt*, 2025 IL 130286, ¶ 15.

¶ 19 "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). "The law recognizes the contents of a person's pockets as undisputably private." *People v. Mason*, 2012 IL App (4th) 110198-U, ¶ 26 (citing *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993)). Because of this expectation of privacy, warrantless searches are presumptively unreasonable. *People v. Lukach*, 263 Ill. App. 3d 318, 323 (1994). However, an individual may consent to a search, creating an exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

¶ 20 Here, the sole issue on appeal is whether defendant consented to the search of her pockets.

¶ 21 The State bears the burden of proving the defendant gave consent and that it was voluntary. *People v. Ivanchuk*, 2025 IL App (4th) 241230, ¶ 60. Whether a defendant voluntarily consented to a search is a question of fact to be determined from the totality of the circumstances. *Id.* "The question of the subject matter of the consent is factual and will not be disturbed unless the conclusion of the trial court is against the manifest weight of the evidence." *Id.*

¶ 22    The State contends the traffic stop concluded when dispatch informed Officer Colon that defendant was valid and clear from any warrants. From there, Colon received permission to search defendant's vehicle. The State argues this led Colon to request defendant empty her pockets prior to searching the vehicle. The State notes Colon was the only officer on scene, never displayed his service weapon, and never had any physical contact with defendant. The State points to the exchange between Colon and defendant and argues Colon requested and did not command her to empty her pockets. The State also argues a reasonable person in defendant's position would have felt free to leave and say no to a request to search.

¶ 23    Defendant argues she was coerced into emptying her pockets. She cites *People v. Anthony*, 198 Ill. 2d 194 (2001), in support.

¶ 24    In *Anthony*, police stopped the defendant when he was exiting an apartment complex. *Id.* at 197. The officer conversed with the defendant and noted he was nervous. *Id.* at 198. The defendant stated he had no weapons or drugs on his person and the officer subsequently asked to search his person. *Id.* The defendant did not verbally consent but, rather, " 'spread his legs apart and put his hands on top of his head; assumed the position,' " which the officer construed as nonverbal consent. *Id.* The officer "never applied any physical force or made any physical contact with the defendant before searching him" and "never threatened the defendant or drew his weapon." *Id.* The subsequent search revealed the defendant possessed cocaine. *Id.* at 199.

¶ 25    The *Anthony* court agreed with the defendant that he had acquiesced to a show of police authority. *Id.* at 201. The court stated, "Consent must be received, not extracted 'by explicit or implicit means, by implied threat or covert force.' " *Id.* at 202 (quoting *Schneckloth*, 412 U.S. at 228). " 'In examining all the surrounding circumstances to determine if in fact the

consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents.' " *Id.* (quoting *Schneckloth*, 412 U.S. at 229). The factual question in *Anthony* came down to nonverbal consent, where the court said a "defendant's intention to surrender this valuable constitutional right should be unmistakably clear." *Id.* at 203. The court noted the officer's armed and uniformed presence was intimidating, and the increasingly accusatory questioning led to the defendant's ambiguous gesture, which it described, in essence, as, " 'Do what you have to do,' " which did not constitute voluntary consent. *Id.* Because the State had failed to establish the defendant voluntarily consented to the search, the court upheld the trial court's suppression of the illegally seized cocaine evidence. *Id.* at 204.

¶ 26 Here, the State responds by arguing defendant's reliance on *Anthony* is misplaced because that case involved nonverbal consent. The State contends defendant both verbally and nonverbally consented to the search, making *Anthony* distinguishable.

¶ 27 While we agree with the State that interpreting a nonverbal physical action was central to *Anthony*, we disagree that it is entirely distinguishable. The critical lesson to be taken from *Anthony* is consent must be voluntary. Here, the trial court found defendant had not voluntarily consented and was, in fact, detained, or at least, she was under the impression she was detained. We find this factual conclusion by the trial court to be reasonable.

¶ 28 It is clear from the evidence that Colon and defendant had some level of familiarity prior to this interaction. Colon requested that defendant step out of her vehicle and ordered her to stand in front of his vehicle. Despite defendant reiterating there was nothing in the vehicle, Colon persisted and secured defendant's consent to search the vehicle. Just prior to asking defendant if she had anything illegal in her pockets, Colon had told her she would be free

to leave after he searched her vehicle. Colon then asked defendant if there was anything in her pockets "[he] need[ed] to know about." Defendant said, "No." Colon then said, "You guys want to take whatever you got in your pockets and just show me." Defendant begrudgingly sighed and said, "Ok." As she was emptying her pocket, Colon directed his flashlight to her sweatshirt pocket and said, "What's in the sweater pocket?" Defendant complied and removed her phone from her sweatshirt pocket. She then emptied her last pocket, where the contraband was discovered.

¶ 29 The sentiment expressed by our supreme court in *Anthony*, when it said the essence of the defendant's actions were, " 'Do what you have to do,' " is strikingly on point for this case. *Id.* at 203. From the onset, Colon said he did not believe defendant when she said that there were no drugs in the vehicle. He persisted until he was able to search the vehicle. Defendant gave in because she felt there was nothing she could do to prevent the search. Colon informed her she would be free to leave *after* he searched the vehicle. However, just prior to searching the vehicle, he then sought to search her person. She sighed and said, "Ok." But, at that point, her response may well have been, "Do what you have to do." She acquiesced. Therefore, based on the totality of the circumstances, we find the State has failed to show defendant voluntarily consented to a search of her person. We "may affirm the trial court for any reason or ground appearing in the record regardless of whether the particular reasons given by the trial court, or its specific findings, are correct or sound." (Internal quotation marks omitted.) *Akemann v. Quinn*, 2014 IL App (4th) 130867, ¶ 21. Accordingly, the trial court's granting of defendant's motion to suppress was appropriate.

¶ 30                                    III. CONCLUSION

¶ 31 For the reasons stated, we affirm the trial court's judgment.

¶ 32        Affirmed.