NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250571-U

NO. 4-25-0571

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 27, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| RAUL BERNARDINO, | ) | No. 23CF885 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Adam Giganti, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Zenoff and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding the State, as the appellant, had not presented a sufficient record to show the police officer who conducted the traffic stop had reasonable suspicion to prolong the stop.

¶ 2    Following a September 2023 traffic stop, the State charged defendant, Raul Bernardino, with unlawful possession of a controlled substance with intent to deliver (900 grams or more of a substance containing fentanyl) (720 ILCS 570/401(a)(1.5)(D) (West 2022)). Defendant filed a motion to suppress evidence, alleging the vehicle in which he was a passenger was stopped and searched in violation of the protections afforded to him by the fourth amendment (U.S. Const., amend. IV). The trial court granted defendant's motion, finding the traffic stop was prolonged without reasonable suspicion of criminal activity. The State filed a motion to reconsider, which the court denied. The State appeals, arguing the court erroneously granted defendant's

motion to suppress evidence where the evidence demonstrated the police officer who conducted the traffic stop had reasonable suspicion to prolong the stop. For the reasons that follow, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4            At an April 2025 hearing on the motion to suppress evidence, defendant presented (1) testimony from Bryce Heaton, an Illinois State Police trooper who initiated the traffic stop of the vehicle in which defendant was a passenger, and (2) audio and video recordings from Trooper Heaton's dash and body cameras. The recordings are not, however, part of the record on appeal. The following is gleaned from the transcripts as is relevant to the limited issue presented in this appeal—whether Trooper Heaton had reasonable suspicion to prolong the traffic stop.

¶ 5            After initiating the traffic stop, Trooper Heaton told the driver, who later indicated he did not speak English, he would receive a warning for a traffic violation. Trooper Heaton then had the driver accompany him to his squad car while defendant remained in the vehicle. Shortly after Trooper Heaton and the driver entered the squad car, Trooper Heaton began asking questions of the driver with the assistance of Google Translate. At some point, another trooper arrived and spoke to defendant. That trooper then conveyed to Trooper Heaton the conversation with defendant. At several points, Trooper Heaton was using his computer in his squad car for various tasks, including writing the warning.

¶ 6            Trooper Heaton testified he eventually suspected the driver of the stopped vehicle may have been involved in some type of illegal activity. He indicated his suspicion was based upon the driver's "visible nervousness." Trooper Heaton explained he frequently encountered people during traffic stops and most people are "very calm," especially when they hear they are getting a warning. He testified the driver was "sweating," had a "carotid artery visibly beating through his neck," and was breathing heavily, "as if he just got done running."

¶ 7 Trooper Heaton described more suspicious circumstances: the vehicle did not belong to the driver or defendant and the driver and defendant were friends who did not know each other very well. Trooper Heaton also explained the driver and defendant had "different stories," with the driver saying they were going to Los Angeles, California, and defendant mentioning they were going to St. Louis, Missouri. Trooper Heaton noted, in his experience with people in other traffic stops, they were consistent with their stories.

¶ 8 Trooper Heaton concluded he had reasonable suspicion of criminal activity based on the driver being very nervous and telling a contradicting story from defendant. He also noted he had additional concerns about not being able to get anything returned from running the vehicle's license plate and vehicle identification number.

¶ 9 Trooper Heaton arranged for a canine to do a free-air sniff. The canine gave a positive alert to the odor of narcotics. A search resulted in the seizure of fentanyl from the vehicle.

¶ 10 Among other arguments in support of his motion to suppress the evidence, defendant argued Trooper Heaton lacked reasonable suspicion to prolong the traffic stop. Specifically, defendant emphasized caselaw providing information learned after a police officer prolongs a stop cannot be considered in evaluating whether reasonable suspicion existed to prolong the stop. Defendant then asserted Trooper Heaton learned of the driver's nervousness and the different travel stories after he prolonged the stop by engaging in a conversation with the driver which had nothing to do with the purpose of the stop. Defendant argued, without this information, Trooper Heaton did not have reasonable suspicion and the evidence should be suppressed.

¶ 11 The State, in response, argued, to the extent the traffic stop was prolonged, it was supported by reasonable suspicion based upon the nervousness of the driver and the different travel stories. We note the State's primary argument was that the traffic stop was not prolonged.

¶ 12    In reply, defendant maintained the information about the driver's nervousness and the different travel stories was learned after the stop was prolonged and, therefore, could not justify its prolongation.

¶ 13    The trial court rendered an oral decision after taking the matter under advisement. In the pronouncement of its decision, the court indicated it had reviewed the transcripts from the hearing and the "video." It also indicated it had requested and reviewed the written warning given by Trooper Heaton, which it marked as a court exhibit. The court noted, "[I]mmediately in the [squad] car, it seems to me within a few minutes, the officer is questioning the [driver] where's he's coming from, where he's going to—." The court stated the questioning included inquiries about the driver's purpose for travel and employment. The court also highlighted various factors related to the issue of reasonable suspicion, including the nervousness of the driver and defendant, the differing travel stories, the ownership of the stopped vehicle, and the lack of familiarity between the driver and defendant. The court then provided explanations for each of these factors and discounted the weight accorded to them. The court ultimately granted defendant's motion to suppress evidence, finding the traffic stop was prolonged without reasonable suspicion.

¶ 14    The State moved to reconsider the granting of defendant's motion to suppress evidence. At a hearing, the parties largely repeated their prior arguments to the trial court. The court, in the oral pronouncement of its decision, noted it had reviewed the transcripts and "watched the video one more time." As for whether the stop was prolonged, the court stated:

> "When the [driver] is brought into the [squad car], almost immediately, [Trooper Heaton] starts asking him questions that are completely unrelated to the stop, and I think that in part also prolongs this stop. Yes, he can ask those questions, but it's a warning and he's gotta type this stuff in. It just starts right there."

- 4 -

The court also construed the testimony as indicating Trooper Heaton was "start[ing] the warning almost ten minutes" into the stop. As for the factors related to the issue of reasonable suspicion, the court again addressed each factor in turn, finding they had innocent alternative explanations. The court ultimately denied the State's motion to reconsider.

¶ 15        This appeal followed.

¶ 16                                      II. ANALYSIS

¶ 17        On appeal, the State argues the trial court erroneously granted defendant's motion to suppress evidence where the evidence demonstrated Trooper Heaton had reasonable suspicion to prolong the traffic stop. Specifically, the State asserts the court reached its erroneous decision by engaging in a prohibited technical dissection of the factors that improperly attacked each factor in isolation. The State further asserts this court, in its *de novo* review, should conclude the totality of the circumstances demonstrates Trooper Heaton had reasonable suspicion.

¶ 18        Defendant, in response, argues this court should affirm the judgment because (1) the motion to suppress was properly granted, (2) the trial court's findings are due great deference, and (3) the State failed to prepare a complete record on appeal.

¶ 19        Our courts generally apply a two-part standard of review when considering a ruling on a motion to suppress evidence. *People v. Hagestedt*, 2025 IL 130286, ¶ 14. We give deference to the trial court's findings of fact and will reverse those findings only if they are against the manifest weight of the evidence. *Id.* Where the factual findings are accepted, we conduct a *de novo* review of whether suppression is warranted under those facts. *People v. Manzo*, 2018 IL 122761, ¶ 25. *De novo* review "means that we perform the same analysis that a [trial court] would perform." *People v. Harris*, 2024 IL 129753, ¶ 64.

¶ 20        A traffic stop that is lawful at its inception may become unlawful if it is prolonged.

*Rodriguez v. United States*, 575 U.S. 348, 350-51 (2015). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop [citation] and attend to related safety concerns." *Id.* at 354. "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* Inquiries unrelated to the mission of the traffic stop do not convert the initial encounter into something other than a lawful seizure, so long as they " 'do not measurably extend the duration of the stop.' " *Id.* at 355 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)).

¶ 21        Where a traffic stop is prolonged, additional fourth amendment justification is necessary for the prolonged stop to be lawful. A prolonged stop to perform a brief investigation into detecting evidence of criminal wrongdoing is lawful where it is supported by a reasonable suspicion of criminal activity. *Id.* The determination of whether an officer has reasonable suspicion requires a consideration of "the totality of the circumstances—the whole picture." (Internal quotation marks omitted.) *People v. Timmsen*, 2016 IL 118181, ¶ 9. "Although 'reasonable, articulable suspicion' is a less demanding standard than probable cause, an officer's suspicion must amount to more than an 'inchoate and unparticularized suspicion or "hunch" ' of criminal activity." *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). In evaluating the officer's conduct, "we apply an objective standard and consider, 'would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' " *Id.* (quoting *Terry*, 392 U.S. at 21-22).

¶ 22        In this case, even if we found the trial court reached its ultimate determination that Trooper Heaton lacked reasonable suspicion to prolong the traffic stop by conducting an improper technical dissection of the circumstances (see *People v. Sadeq*, 2018 IL App (4th) 160105, ¶ 94),

we could not, in our *de novo* review, find the evidence demonstrated Trooper Heaton had reasonable suspicion to prolong the traffic stop. The State, on appeal, does not dispute the stop was prolonged. As a result, we accept, for the purposes of this appeal, the trial court's finding that Trooper Heaton's examination of the driver inside the squad car prolonged the stop. As defendant repeatedly argued below, any information learned after an officer prolongs a stop cannot be considered in evaluating whether reasonable suspicion existed to prolong the stop. See *id.* ¶ 87 ("The State may not bootstrap subsequently learned information in attempting to establish reasonable suspicion."). Given the trial court's finding concerning when the stop was prolonged, we cannot, based upon the limited record presented, find Trooper Heaton obtained the information which formed the basis for reasonable suspicion prior to the prolonging of the stop.

¶ 23        Accordingly, we conclude the State, as the appellant, has not presented a sufficient record to show Trooper Heaton had reasonable suspicion to prolong the traffic stop. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis.").

¶ 24                                III. CONCLUSION

¶ 25        For the reasons stated, we affirm the trial court's judgment.

¶ 26        Affirmed.